RICHARDSON *v.* BROWN.

EXCHANGE OF PROPERTY—INSANE PERSONS.

Suit against administrator of decedent's estate to set aside exchange of corporate stock on ground that decedent was mentally incompetent, was properly dismissed; ·finding that decedent was mentally competent at time of transaction being justified by record.

Appeal from Kent; Brown (William B.), J. Submitted April 16, 1929. (Docket No. 13, Calendar No. 33,482.) Decided June 3, 1929.

Bill by Laura S. Richardson (Parks) against William H. Brown, executor of the estate of William D. Johnson, deceased, and others to set aside the transfer of certain shares of stock on the ground of fraud. From a decree for defendants, plaintiff appeals. Affirmed.

*Knappen, Uhl & Bryant* and *C. Sophus Johnson,* for plaintiff.

*Edward J. Bowman* and *Ward & Strawhecker,* for defendants.

WIEST, J. In this suit plaintiff alleged in the bill that on August 14, 1914, William D. Johnson was mentally incompetent and Frank S. Gibson on that day fraudulently took advantage of his mental condition, and obtained from him 600 shares of stock of the Ranney Refrigerator Company, of great value, by giving him, in part payment therefor, 105 shares of stock of the McKenzie River Timber Company, of little comparative value. Upon such issue plaintiff sought decree setting the transaction aside and

constituting the refrigerator company shares of stock a part of the assets of the estate of Mr. Johnson, now deceased. Mr. Gibson is also dead. The circuit judge found Mr. Johnson mentally competent, and dismissed the bill. Plaintiff appealed.

The conclusion we have reached upon the issue of fact renders it unnecessary to state or decide the legal questions urged by defendants.

Mr. Johnson, on August 7, 1914, was president of the Greenville State Bank, and was on that day at the bank attending to the duties of his position. Mr. Gibson was vice-president of the bank, and related to Mr. Johnson by marriage. The subject of the deal had been under consideration for some time. Mr. Johnson entered in his books of account minutes of the transaction with Mr. Gibson, and when he got home informed plaintiff that he had purchased stock of the McKenzie River Timber Company. The deal with Mr. Gibson involved also a cash payment to Mr. Johnson and some obligations later paid. Mr. Johnson died November 19, 1914. Mr. Johnson was no novice in business matters. He was 76 years of age, had been president of the bank many years, had had a long business experience, and was fully aware of the value of the shares of stock of the refrigerator company. He was not unaware of the vast timber holdings of the McKenzie River Timber Company, for, in July, 1907, he acquired 49 shares of its stock; in December, 1907, 21 shares; in September, 1909, 20 shares, and in March, 1911, 15 shares; all of $100 par value. On August 10, 1914, or three days after the deal with Mr. Gibson, he gave plaintiff 55 shares of the McKenzie River Timber Company's stock, which she still holds.

The day before the deal with Mr. Gibson, Mr. Johnson went to Grand Rapids and attended the races.

We have considered the testimony claimed to have established his mental incompetency, and think it short of any such result.

We will briefly review the showing, so far as deserving mention. For some time Mr. Johnson had suffered from a rectal trouble, the nature of which was not disclosed, and also some affliction of the feet, rendering walking difficult. His bodily ailments caused him pain, but there was no showing connecting the physical with the alleged mental condition, beyond manifestations we will mention. At the table he spilled tea and coffee, had difficulty in handling his food and also in arranging his clothing while dressing. He experienced lack of control of certain bodily organs while in bed and at the toilet. At home he became less dictatorial and somewhat irritable, and cried at times. He requested the cashier at the bank to watch his official actions, saying that he "did not feel that he was right mentally," and that he ought not to stay at the bank. He was relieved of some duties at the bank. In the particulars mentioned we note physical weakness only, except in the request to the cashier, and we think the doubt then expressed was over-cautious on his part, for he continued his duties as president, and the cashier found no occasion to supervise his acts. To show no change in Mr. Johnson's mentality, many long-time and intimate acquaintances, who met him almost daily, up until two weeks before his death, unqualifiedly testified that, while there was a change in his physical condition, there was none in his mental.

We think the character, temperament, and mental capacity of Mr. Johnson at the time of the transaction with Mr. Gibson, well expressed in an answer signed by plaintiff and others in a matter relating

to Mr. Johnson's will, which he made in 1909. We quote:

"William D. Johnson,   *   *   *   was of sound mind and memory, in full possession of his mental faculties, president of the Greenville State Bank, a leader in the business and commercial world in which he lived, a shrewd, sagacious, thrifty, and successful business man of strong convictions and pronounced independence, enjoying the confidence and respect of his community, a strong forceful character that could not be dominated or influenced against his will."

Mr. Johnson may have made a poor deal with Mr. Gibson, but, unless he was mentally incompetent, we may not set it aside.

Plaintiff made no case, and the decree dismissing the bill is affirmed, with costs to defendants.

NORTH, C. J., and FEAD, FELLOWS, CLARK, MC-DONALD, POTTER, and SHARPE, JJ., concurred.